UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL MEGGINSON, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF NEW YORK; JOSHUA WIGFALL, *individually*; CURTIS TUCKER, *individually*; ROGER BERRIOS, *individually*; FREDDIE LARRY, *individually*; DURRELL WILSON, *individually*; KERON GUY, *individually*; JAMAL DART, *individually*; "JANE" PHILLIPS; *and* JOHN & JANE DOES 1 through 10, *individually*, <br><br> Defendants. | **MEMORANDUM & ORDER** <br> 24-CV-115 (NRM) (MMH) |

NINA R. MORRISON, United States District Judge:

Plaintiff Michael Megginson, by counsel, sues the City of New York and named and unnamed individual New York City Department of Corrections ("NYCDOC") officers under 42 U.S.C. Section 1983 and related state laws, seeking damages resulting from a brutal assault that he alleges he suffered at the hands of several corrections officers while incarcerated at Rikers Island in October 2022, resulting in physical injuries and requiring his transfer to an outside hospital for further evaluation and treatment. Compl. ¶¶ 1–10, ECF No. 1 at 3–4.

Defendants move for judgment on the pleadings, arguing that Megginson's claims are barred by the general terms of a release that he signed as part of a settlement in an earlier-filed civil rights action, against a different group of

1

corrections officers and the City defendants. *See generally* Mem. of Law in Support of City Defs.' Mot. to Dismiss ("Def. Mem."), ECF No. 39-1. Megginson argues that the general release, which he signed while incarcerated and without the advice of counsel, does not apply to the claims in this action. *See* Mem. of Law in Opp. to City Defs.' Mot. to Dismiss ("Pl. Mem."), ECF No. 41

Because the motion and opposition refer to matters outside the Complaint, the Court will construe it as a motion for summary judgment under Federal Rules of Civil Procedure ("FRCP") Rule 56. For the reasons set forth below, the motion is **DENIED**.

## BACKGROUND

### I.      The First Assault and *Megginson I*

On January 4, 2022, Megginson filed a *pro se* action ("*Megginson I*") against the City of New York and numerous NYCDOC officers in the Southern District of New York. Decl. of Michael Megginson ("Pl. Decl.") ¶¶ 1–2, ECF No. 41-1. Megginson alleged that on December 19, 2021, while incarcerated at Rikers Island, he was attacked without justification by the corrections officers, who sprayed him with tear gas, beat him with batons, and broke a baton over his face. *Id.* at ¶ 2; Am. Compl. ("Megginson I Am. Compl.") at 4–5,[1] *Megginson v. City of New York*, No. 22-CV-51 (JGK) (GG) (S.D.N.Y. Jan. 4, 2022), Dkt. No. 10. Megginson alleged that he was then handcuffed and left in a shower pen where, without medical assistance, he passed out from the tear gas and the injuries he had sustained. Megginson I Am.

---

[1] Unless otherwise noted, page numbers refer to the pages generated by the Electronic Case Filing System ("ECF").

Compl. at 4–5. He sought damages for his injuries, including bruises and a thirteen to twenty-four inch laceration to his face. *Id.* at 5.

Megginson avers that around July 2022, while he remained incarcerated and without the assistance of counsel, he began discussing settlement of his *Megginson I* claims with Assistant Corporation Counsel Mary K. Sherwood. Pl. Decl. ¶¶ 3–4. Megginson corroborates this timeline with a July 17, 2022 letter he filed with the *Megginson I* court, which stated that on July 14, 2022, he and counsel for the City of New York had agreed to a "possible settlement conference" to resolve his claims against the *Megginson I* defendants. Pl. Mem. Ex. 1, ECF No. 41-2. Defendants do not contest that settlement discussions in *Megginson I* commenced around this time.

On August 17, 2022, Megginson was released from NYCDOC custody. Pl. Decl. ¶ 5; *see also* Pl. Mem. Ex. 2, ECF No. 41-3 (advising court of release). He was only out of jail for a brief period of time. Pl. Decl. ¶¶ 5, 7. During that time, Megginson avers, he and Ms. Sherwood agreed to "potential settlement" of his *Megginson I* claims for $2,000. *Id.* at ¶ 6. Defendants do not contest that an agreement in principle to settle *Megginson I* was reached around August 2022. *See generally* Def. Mem.; Reply Mem. of Law in Further Support of City Defs.' Mot. to Dismiss ("Def. Reply"), ECF No. 42. Shortly thereafter, and before executing any settlement documents, Megginson was re-detained and returned to Rikers Island. Pl. Decl. ¶ 7.

## II.    The Second Assault

Megginson alleges that on October 7, 2022, while he was in an intake medical area on Rikers Island, defendant NYCDOC officers assaulted him, punched him in

3

the face repeatedly, tackled him to the floor, and stomped on him. Compl. ¶¶ 1–5. While he was on the floor, the officers then pressed their knees into his neck and back; punched him in the head and face; assaulted him with handcuffs, including punching him in the face and ears with handcuffs; and sprayed him in the eyes with MK-9 tear gas spray. *Id.* at ¶¶ 5–7. Megginson was denied immediate medical treatment and left in his cell. *Id.* at ¶ 9.

As a result of this second assault, Megginson suffered a laceration to his head, swelling, an allergic reaction in both eyes, pain and suffering, and emotional distress. *Id.* at ¶¶ 11–12. He was eventually treated for his injuries at Rikers Island and was then transferred to Bellevue Hospital for further evaluation, *id.* at ¶ 10, before being returned to Rikers Island, Pl. Decl. ¶ 9.

### III.    **The General Release**

Plaintiff was still detained on Rikers Island around October 19, 2022, when Ms. Sherwood drafted and mailed him settlement documents — a stipulation of dismissal, stipulation of settlement, and general release — reflecting the $2,000 settlement they had reached for his *Megginson I* claims. *See id.* at ¶ 9; Decl. of Elissa Jacobs in Support of Defs.' Mot. to Dismiss Ex. A ("Settlement Agreement"), ECF No. 39-3. Each of the documents, which Defendants attach as a single exhibit, was prepared by the City of New York and post-dates the October 7, 2022 beating. *See generally* Settlement Agreement. Because these settlement documents form the basis for Defendants' motion, the Court will review them in some detail.

The first document, the stipulation of dismissal, was so-ordered by the Honorable John G. Koeltl of the Southern District of New York and pertains only to the *Megginson I* action.  Settlement Agreement at 1–2.  It bears the caption for that case, and states in relevant part:

> Whereas, plaintiff now seeks to voluntarily dismiss his claims against [the named defendants in *Megginson I*], now, it is hereby stipulated and agreed . . . that any and all claims arising out of the events alleged in the Complaint and Amended Complaint in this matter that were asserted or could have been asserted on behalf of plaintiff Michael E. Megginson, against [named defendants in *Megginson I*], are hereby dismissed . . . .

*Id.* (citation modified).

The second document, the stipulation of settlement, also bears the *Megginson I* caption.  *Id.* at 3.  It then proceeds through several "whereas" clauses that reference the *Megginson I* litigation.  *Id.*  These clauses conclude that "whereas, the parties now desire to resolve the issues raised in this litigation . . . it is hereby stipulated and agreed . . . [that] [t]he above-referenced action is hereby dismissed," without costs "except as specified in paragraph '2.'"  *Id.*  (citation modified)

> Paragraph 2 then states:
>
> Defendant City of New York hereby agrees to pay plaintiff Michael Megginson the sum of Two Thousand ($2,000.000) Dollars in full satisfaction of all claims, including claims for costs, expenses and attorneys' fees.  In consideration for the payment of this sum, plaintiff agrees to dismissal of all the claims against the defendant and to release defendant City; its successors or assigns; and all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from any and all liability, claims, or rights of action alleging a violation of plaintiff's civil rights and any and all related state law claims, from the beginning of the world to the date of the General Release . . . .

5

*Id.* at 4.

The stipulation then provides that Megginson "shall execute . . . all documents necessary to effect this settlement, including, without limitation, a General Release, based on the terms of paragraph '2.'" *Id.* The stipulation also states that it "shall not be admissible in, nor is it related to, any other litigation or settlement negotiations, except to enforce the terms of this agreement." *Id.* at 4–5. The stipulation concludes with an integration clause. *See id.* at 5.

Finally, like the first two documents, the general release refers to the *Megginson I* case number. *Id.* at 6. It states that:

> I, Michael E. Megginson . . . plaintiff in the action entitled <u>Megginson v. City of New York</u>, 22 Civ. 51 (JGK) (GWG), as "RELEASOR," in consideration of the payment of Two Thousand ($2,000.00) DOLLARS to me by the City of New York, do hereby release and discharge defendant City; its successors or assigns; and all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, collectively the "RELEASEES," from any and all liability, claims, or rights of action alleging a violation of my civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release . . . .

*Id.* (citation modified). The general release also states, in bold and all-caps, that it "may not be changed orally" and that "the undersigned has read the foregoing release and fully understands it." *Id.* (citation modified).

Megginson executed the general release on or about October 27, 2022, just twenty days after the October 7, 2022 assault. *Id.* Now represented by counsel, he brought the instant action ("*Megginson II*") more than a year later — on January 5, 2024 — for violation of his constitutional rights under 42 U.S.C. section 1983 and

6

supplemental state law claims based on the second assault.  Compl. ¶¶ 25–78. Defendants move for judgment on the pleadings, arguing that *Megginson II* must be dismissed because it is barred by the general release signed in *Megginson I*.  Def. Mem. at 7–11.

Megginson, who has no legal training and no education beyond high school, claims that he had no intention of resolving his *Megginson II* claims by signing the general release and no idea that doing so would impact his *Megginson II* claims.  Pl. Decl. ¶¶ 11–12, 16.  He states that because the incident in dispute in this case "had not yet occurred at the time Ms. Sherwood and [he] originally spoke in August 2022 about the $2,000 offer to settle [his] *Megginson I* claims, neither Ms. Sherwood nor [he] could have intended or contemplated that the $2,000 *Megginson I* settlement offer would cover the October 7, 2022 incident."  *Id.* at ¶ 10.  Ms. Sherwood and Megginson never discussed that the general release would cover the claims at dispute in this action, or any other claims beyond *Megginson I*.  *Id.* at ¶ 14.  Had he known the general release would bar his *Megginson II* claims, Megginson claims, he would not have agreed to settle both cases for $2,000.  *Id.* at ¶ 13.  Although Megginson had previously brought several *pro se* cases against the City of New York, no one ever explained to him that a general release could affect other claims.  *Id.* at ¶ 15.

Defendants do not contradict Megginson concerning the timing of the *Megginson I* settlement in principle and the parties' intent to release only the *Megginson I* claims.  Def. Reply at 3–4.  Instead, Defendants argue that both complications are "immaterial" in light of the "unambiguous terms of the General

7

Release." *Id.* (citing *Caraballo v. City of New York*, No. 24-2051-CV, 2025 WL 1430152, at *3 (2d Cir. May 19, 2025) (summary order)).

## STANDARD OF REVIEW

### I.    Treatment as Motion for Summary Judgment

Before addressing the merits of Defendants' motion, the Court must determine whether the motion should be decided as a Rule 12(c) motion for judgment on the pleadings or converted into a motion for summary judgment.

Defendants move to dismiss pursuant to FRCP Rule 12(c).  On a Rule 12(c) motion, as on a Rule 12(b)(6) motion, the Court may consider material extrinsic to the complaint only if it is integral to the complaint, incorporated by reference, or a matter of which courts can take judicial notice.  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Where a motion "presents matters outside the pleadings" that do not fall into one of those recognized categories, "a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment." *Galiotti v. Green*, 475 F. App'x 403, 404 (2d Cir. 2012), *as amended* (Aug. 30, 2012) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009)); *see also Lively*, 6 F.4th at 304 (finding error where district court "rel[ied] on several documents attached to Defendants' answer in deciding their Rule 12(c) motion without converting it into a motion for summary judgment as required by [FRCP Rule 12(d)]").

Megginson argues that Defendants' motion must be converted into one for summary judgment, and additional discovery allowed, because it relies on documents

8

outside the pleadings, namely the settlement documents. Pl. Mem. at 11–13. Defendants acknowledge that the motion may be converted into one for summary judgment, Def. Mem. at 8 n.2, but argue that the Court should instead take judicial notice of the settlement agreement as records of prior litigation. Def. Reply at 5–6.

Defendants cite several decisions in this circuit taking judicial notice of settlement agreements and releases. Def. Mem. at 6 n.1; Def. Reply at 6 (citing *Johnson v. City of New York*, No. 21-CV-10535 (VSB), 2023 WL 5629232, at *3 (S.D.N.Y. Aug. 31, 2023); *In re Nine W. LBO Sec. Litig.*, 505 F. Supp. 3d 292, 302–03 (S.D.N.Y. 2020); *Deylii v. Novartis Pharms. Corp.*, No. 13-CV-06669 (NSR), 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014)). However, those cases are not on point. In *Deylii* and *Nine W.*, the settlement documents were judicially noticeable because they were filed on the public docket in the previous litigation. *See Nine W.*, 505 F. Supp. 3d at 302–03; *Deylii*, 2014 WL 2757470, at *4. "When a general release has been filed with a court and is a matter of public record, a court may properly take judicial notice of it." *Muhammad v. Schriro*, No. 13-CV-1962 (PKC), 2014 WL 4652564, at *3 (S.D.N.Y. Sep. 18, 2014). Here, however, only the stipulation of dismissal was filed in *Megginson I*. Stip. & Order of Dismiss., *Megginson I*, No. 22-CV-51, Dkt. No. 39.

*Johnson*, meanwhile, took judicial notice of the release as a "document[] either in a plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Johnson*, 2023 WL 5629232, at *2 (quoting *Kalyanaram v. Am. Ass'n of Univ. Professors*, 742 F.3d 42, 44 n.1 (2d Cir. 2014)). Concerning judicial notice of documents in a plaintiff's possession, the Second Circuit has since clarified that "a

9

plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a *necessary prerequisite* to the court's consideration of the document on a dismissal motion; *mere notice or possession is not enough.*" *Meyer v. Seidel*, 89 F.4th 117, 134 (2d Cir. 2023) (emphasis in original).  Here, the settlement documents are not referenced in the Complaint, and there is no indication that Megginson relied on them in drafting it.  *See generally* Compl.  Accordingly, the settlement agreement is not judicially noticeable as a document in Megginson's possession and, apart from the publicly-filed Stipulation of Dismissal, the Court may not take judicial notice of it in the context of a motion to dismiss.  *See Prime Contractors, Inc. v. APS Contractors Inc.*, 754 F. Supp. 3d 289, 303 (E.D.N.Y. 2024) (declining to take judicial notice of release); *Edo v. Martiny*, No. 15-CV-202 (CBA), 2016 WL 7839337, at *2 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2017 WL 785653 (Mar. 1, 2017).

Plaintiff does not contest the accuracy or authenticity of the settlement documents.  Instead, he argues that they do not bar his claims in this litigation.  With his opposition, he has submitted a sworn declaration, Pl. Decl., as well as two letters he filed in *Megginson I*.  Pl. Mem. Ex. 1; Pl. Mem. Ex. 2.  Defendants do not contest the facts asserted in these documents.

Given the nature of the parties' evidentiary submissions, conversion of Defendants' motion into one for summary judgment is appropriate here.[2]

---

[2] The Court finds that the parties have received adequate notice and discovery. "[F]ormal notice is not required where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Hernandez*, 582 F.3d at 307 (citation omitted).  Megginson,

The Court may only grant Defendants' motion if, considering all the evidence in the light most favorable to Plaintiff, there is no genuine dispute of material fact and Defendants show that they are entitled to judgment as a matter of law. *See Charlery v. Dep't of Educ. of City of New York*, No. 15-CV-7994 (JPO), 2017 WL 2124447, at \*2 (S.D.N.Y. May 15, 2017), *aff'd*, 737 F. App'x 54 (2d Cir. 2018). "The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact." *Thorpe v. City of New York*, No. 19-CV-5995 (CM)(RWL), 2021 WL 3811238, at \*4 (S.D.N.Y. Aug. 25, 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once such a showing has been made, the non-moving party must present 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). "It is well established that the statements in an affidavit or affirmation opposing a motion for summary judgment must be accepted as true." *Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 438 (S.D.N.Y. 2018). Nevertheless, "[t]he party opposing summary judgment 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Thorpe*, 2021 WL 3811238, at \*4 (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). "Finally, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts'" to survive summary judgment. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

---

who requests conversion, Pl. Mem. at 11–13, had adequate notice of Defendants' motion. Def. Mem. at 8 n.2; *see Alicea v. City of New York*, No. 1:16-CV-07347 (JLR), 2023 WL 3724131, at \*5 n.4 (S.D.N.Y. May 30, 2023) (finding that defendants' brief gave sufficient notice of possible conversion). Meanwhile, because the motion is denied, Megginson's request for pre-summary judgment discovery is moot.

## DISCUSSION

Megginson argues that the general release he signed in *Megginson I* does not bar the claims he brings in this lawsuit.  First, he argues, "special rules in light of the nature of releases" under New York law require Defendants to show that the parties intended for the release to cover matters outside the action in which it was executed, a burden that Defendants have not met here.  Pl. Mem. at 8–10 (quoting *In re Clinton St. Food Corp.*, 254 B.R. 523, 534 (S.D.N.Y. 2000)).  Second, Megginson argues, his educational background, *pro se* status, and the low value of the *Megginson I* settlement compared to the serious injuries he claims in *Megginson II* all indicate that the parties did not intend to settle *Megginson II* when executing their *Megginson I* settlement agreement, and that the enforceability of any general release should be "litigated in the interest of justice."  *Id.* at 11.

Defendants argue that Megginson's subjective intent in signing the release and the circumstances under which he did so are immaterial, because "the language of the release unambiguously precludes [him] from advancing any of the claims at issue in the instant matter," Def. Mem. at 9, and extrinsic evidence may only be considered if the agreement is ambiguous, Def. Reply at 6.  Defendants further assert that "civil rights claims may be dismissed when a plaintiff has released a defendant from liability even if the Plaintiff was *pro se* and represents that he was unaware of what he was signing."  Def. Mem. at 10.  Defendants rely on the Second Circuit's recent decision in *Caraballo*, a summary order, in which the Court stated that "[w]here, as here, the language of a release is clear, effect will be given to the intention of the parties as indicated by the language employed and the fact that one of the parties

12

may have intended something else is irrelevant." Def. Reply at 5 (quoting *Caraballo*, 2025 WL 1430152, at \*3).

### I.  Governing Law

As an initial matter, because the interpretation of the settlement agreement is a matter of contract law, New York law — and binding interpretations thereof by New York courts — governs the release of Plaintiff's state law claims. *See Mateo v. Carinha*, 799 F. App'x 51, 53 (2d Cir. 2020) (summary order) ("We consider New York law and federal cases applying New York law in interpreting the release."). Although "federal law governs the validity of releases of federal causes of action," including Megginson's Section 1983 claims, the "issue is settled in this Circuit" that courts should "look to state law to provide the content of federal law." *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993). As a result, the Court is bound by decisions of the Court of Appeals, New York's high court. Rulings from the Appellate Division, New York's intermediate appellate court, are "not to be disregarded by a federal court unless [the Court] is convinced by other persuasive data that the [Court of Appeals] would decide otherwise." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005). Finally, interpretations of New York law by federal courts are persuasive, but not binding.

### II.  Construction of General Releases Under New York Law

New York courts have long recognized unique complexities belonging to the interpretation of general releases.[3] It bears emphasizing that as with other contracts, the "general rule is that 'a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties.'" *Thailer v. LaRocca*, 571 N.Y.S.2d 569, 571 (App. Div. 2d Dep't 1991) (citation omitted). Nevertheless, general releases must be "closely scrutinized and strictly construed." *Colton v. New York Hosp.*, 385 N.Y.S.2d 65, 66–67 (App. Div. 1st Dep't 1976).

The touchstone for the interpretation of general releases under New York law is *Mangini v. McClurg*, 249 N.E.2d 386 (N.Y. 1969). There, the New York Court of Appeals explained that although "a general release is governed by principles of contract law," its interpretation must recognize that "releases contain standardized, even ritualistic, language," and that such "literal language should not be determinative of the ultimate result or be applied mechanically." *Id.* at 389–90. Accordingly, whether "in reformation or on construction of the instrument," a releasor may avoid general language in a release, even if "valid on its face and properly executed," if that language was the result of "a mutual mistake, or otherwise does not

---

[3] The Court notes that its analysis has been informed in part by an *amicus curiae* brief by Professor Alexander A. Reinert, filed in another Section 1983 action pending before the Court and reviewed at the time of filing, for its thorough discussion of New York law concerning general releases. Br. *Amicus Curiae* of Prof. Alexander A. Reinert, *Terry v. City of New York*, No. 23-CV-5955 (NRM) (JRC), Dkt. No. 42 (Oct. 27, 2025). The Office of the Corporation Counsel withdrew the motion to dismiss Terry's complaint shortly after Professor Reinert's amicus brief was filed, and discovery is ongoing. *See* Mot. to Withdraw Defs.' Mot. to Dismiss, *Terry v. City of New York*, No. 23-CV-5955 (NRM) (JRC), Dkt. No. 43 (Nov. 3, 2025).

represent the intent of the parties." *Id.* at 390.  In other words, the intent of the parties, not the literal language of the release, governs.  Canvassing its past decisions, the Court of Appeals concluded that "while it has been held that an unreformed general release will be given its full literal effect where it is directly or circumstantially evident that the purpose is to achieve a truly general settlement, the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form." *Id.* at 389–90 (citation omitted) (collecting cases).  *Mangini* also recognized that the interpretation of a general release is "subject to special rules" in the personal injury context whereby, absent "particular language of the release" or circumstances of the settlement, unknown injuries are assumed to be "matters not in contemplation at the time of settlement" and exempt from even broadly written general releases. *Id.* at 389–91.

The Court of Appeals has repeatedly reaffirmed *Mangini*'s holding.  *See Booth v. 3669 Delaware, Inc.*, 703 N.E.2d 757 (N.Y. 1998); *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011); *Smith v. City of New York*, No. 116, 2025 WL 3671272, at *1 (N.Y. Dec. 18, 2025). Under the *Mangini* line of cases, which has now governed the construction of releases in New York for over half a century, it is not enough for a defendant to present a general release signed by a plaintiff.  Instead, to dismiss an action based on a release, "the movant must show that the release was intended to cover the subject action or claim."  *Mazzurco v. PII Sam, LLC*, 63 N.Y.S.3d 59, 60 (App. Div. 2d Dep't 2017)

15

(quoting *Choudhry v. Five Star Contr. Cos., Inc.*, 52 A.D.3d 763, 764 (N.Y. App. Div. 2d Dep't 2008)).  Absent such a showing, and notwithstanding boilerplate general language, a release will be construed narrowly.  A "general release may not be read to cover matters which the parties did not desire or intend to dispose of." *Id.* (quoting *Huma v. Patel*, 68 A.D.3d 821, 822 (N.Y. App. Div. 2d Dep't 2009)).

A court interpreting the releasor and releasee's intent begins by giving effect to any "clear . . . intent of the parties as indicated by the language" of the release itself. *Shklovskiy v. Khan*, 273 A.D.2d 371, 372 (N.Y. App. Div. 2d Dep't 2000).  Such evidence must exceed the "standardized, even ritualistic language" often found in releases. *Mangini*, 249 N.E.2d at 389.  As the Court of Appeals explained, in a case cited favorably in *Mangini*, the "meaning and coverage [of a general release] necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given." *Cahill v. Regan*, 157 N.E.2d 505, 509–10 (N.Y. 1959) (citations omitted) (finding general release did not include release of claims to invention, where releasor did not know patent had been applied for).[4]  A court also may turn to parol evidence to interpret a

---

[4] In a summary order, the Second Circuit cited a case from the Second Department, *A.A. Truck Renting Corp.*, for the apparently contradictory proposition that "[w]ords of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." *See Mateo*, 799 F. App'x at 53 (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 916 N.Y.S.2d 194, 196 (App. Div. 2d Dep't 2011)).  That case merits further discussion. *A.A. Truck Renting Corp.* rests on *Lucio v. Curran*, 139 N.E.2d 133 (N.Y. 1956).  There, the plaintiff had offered defendants a limited release as part of settlement negotiations in a first proceeding. *Id.* at 135.  The defendants refused, demanding instead a general release, which the

release if (a) "as a matter of law, [the release] is ambiguous," or (b) the "[extrinsic] evidence establishes one of the 'traditional bases for setting aside written agreements,'" such as mutual mistake. *Smith*, 2025 WL 3671272, at *1 (citations omitted).

Just last year, the Court of Appeals affirmed the *Mangini* rule that a "clear and unambiguous" agreement is required to release unrelated claims. *See Smith*, 2025 WL 3671272, at *1 (quoting *Centro Empresarial Cempresa S.A.*, 952 N.E.2d at 1000 (quoting *Booth*, 703 N.E.2d at 758 (citing *Mangini*, 249 N.E.2d at 386))). In that case, the plaintiff had commenced two actions against the City of New York following two separate false arrests. *Id.* The plaintiff, who was represented by the same counsel in both cases, settled the second one and signed a general release. *Id.* at *1, 2 n.2. The general release included an exclusion clause that, "in bolded and all-capitalized text," advised the plaintiff to "list below the exclusion of other actions or claims from this release'" and "warned that the release would cover 'all outstanding actions or claims . . . unless excluded specifically by name.'" *Id.* at *1 (omission in

_____

plaintiff's own attorney prepared and the plaintiff signed. *Id.* The Court of Appeals determined that the plaintiff had "deliberately bargained for and agreed to" the release of claims outside his first action. *Id.* at 135–36. As the Court of Appeals later explained in *Mangini*, the *Lucio* release was "given its full literal effect" because it was "directly [and] circumstantially evident that the purpose [was] to achieve a truly general settlement." *Mangini*, 249 N.E.2d at 389–90. Likewise, in *A.A. Truck Renting Corp.*, the Second Department relied on circumstantial evidence of intent including that the release was drafted by counsel for both parties and included two exceptions, neither of which applied to the second-filed action. 916 N.Y.S.2d at 196. Absent such circumstantial evidence, *A.A. Truck Renting Corp.* does not signify that words of general release are generally to be applied to all pre-existing controversies.

17

original).  The plaintiff did not list his first action, and the City thereafter moved for summary judgment, relying on the release.  *Id.*

Relying on the plain language of the release and the exclusion clause, the Court of Appeals determined that the release applied to both actions:

> The City's intent to secure a release from plaintiff of 'any and all' claims is evidenced by the plain text of the document it transmitted for plaintiff's signature. . . . Although plaintiff, who was represented by counsel, could have excluded this action from the release by the simple act of listing it in the space provided for that purpose, he signed the release without doing so, an objective manifestation of assent that is binding upon him notwithstanding any unilateral mistake or subsequent regret on his part."

*Id.* at *2.

Because Plaintiff's intent to release all claims was so evident under these circumstances, the Court of Appeals declined to consider parol evidence.  *See id.*; *see also id.* at *1 n.1 (clarifying that *Mangini*'s "special rules" concerning parol evidence were limited to claims for unknown injuries); *Smith v. City of New York*, 230 N.Y.S.3d 5, 10 (App. Div. 1st Dep't 2025) (Mendez, J., dissenting) (summarizing parol evidence used to interpret general releases).  Notably, however, the *Smith* court explicitly left open the question of whether the result would have been different had the plaintiff not been represented by the same attorney in both actions.  *Smith*, 2025 WL 3671272, at *2 n.2.

Defendants urge the Court to interpret the release in light of the "'strong policy considerations' that require giving effect to a general release."  Def. Mem. at 9 (citing *Ruskay v. Waddell*, 552 F.2d 392, 398 (2d Cir. 1977)).  As *Ruskay* recognized, however, although judicial policy generally favors finality in "the settlement of

complex lawsuits," a different concern arises when the courts are called upon to protect the "uninformed layman from the consequences of a hasty settlement." *See id.* at 396. And as *Smith* makes clear, the *Mangini* line of cases has important implications for *pro se* civil rights litigants who claim that they have been injured by institutional or municipal defendants on more than one occasion. Consider, for example, an individual who is falsely arrested for a crime he did not commit and spends a year at Rikers Island before the charges are dismissed and he is released. If he were to fall and sustain minor injuries in a Rikers Island common area due to the negligence of a City employee, and settles that action for a small amount, he might agree to execute a standardized general release like the one the City used here. Under Defendants' interpretation of New York law, even if the general release contains no indication that the parties intended to settle any additional claims, the release would also bar him from seeking what would no doubt be a claim for substantially greater damages arising from his false arrest and months of wrongful incarceration. Or, in another context, consider a City public school teacher wrongfully terminated in retaliation for reporting sexual harassment in the workplace. If she then settled an unrelated claim for injuries caused by another City employee or agency — say, arising from an unconstitutional search and seizure by police during a street encounter — and executed a general release like Megginson's, Defendants' interpretation of the law would bar her from bringing any claim against her longtime municipal employer for wrongful termination. To be sure, New York law would permit the parties in these cases to agree to releases that extend beyond a

19

single cause of action, provided that "it is directly or circumstantially evident that the purpose [of the release] is to achieve a truly general settlement." *Mangini*, 249 N.E.2d at 389–90. But "surreptitious" means of obtaining such releases are strongly disfavored. *Smith*, 2025 WL 3671272, at *2.

In sum, a court construing the scope of a purportedly general release should first determine whether, setting aside "standardized, even ritualistic, language" that should not be "applied mechanically," *Mangini*, 249 N.E.2d at 389–90, the "language of the release" nevertheless manifests "clear and unambiguous" intent of the parties to release all claims, *Smith*, 2025 WL 3671272, at *1. Second, the court should consider parol evidence, if either the contract is intrinsically ambiguous or the evidence shows that the general language of the release was the product of a mutual mistake. *Smith*, 2025 WL 3671272, at *1.

### III.   Federal Court Applications of New York Law

District courts in New York are divided in their construction and interpretation of general releases. Some courts, including those cited by Defendants, have determined that releases — with language similar or identical to that signed by Megginson — bar already-existing claims against the City of New York and its employees. *See* Def. Mem. at 9–10; Def. Reply at 4–5; *see also Johnson v. City of New York*, No. 21-CV-10535 (VSB), 2023 WL 5629232, at *5 (S.D.N.Y. Aug. 31, 2023); *Liverpool v. City of New York*, No. 18-CV-1354 (LJL), 2021 WL 3604855, at *1, 3 (S.D.N.Y. Aug. 12, 2021) (enforcing release signed by represented party for $15,000); *Dinkins v. Decoteau*, No. 1:15-CV-8914 (GHW), 2016 WL 3637169, at *3 (S.D.N.Y.

June 29, 2016); *Arzu v. City of New York*, No. 13-CV-5980 (RA), 2015 WL 4635602, at *1, 4 (S.D.N.Y. Aug. 3, 2015) (enforcing release of claims for $15,000); *Muhammad v. Schriro*, No. 13-CV-1962 (PKC), 2014 WL 4652564, at *5 (S.D.N.Y. Sept. 18, 2014). Yet many of the cases Defendants cite, and others like them, apply "general principles of contract law," *Arzu*, 2015 WL 4635602 at *4, disregarding the more specific *Mangini* line of cases.  *See Johnson*, 2023 WL 5629232, at *4 ("Courts interpret a settlement release under traditional contract principles and must dismiss claims that are precluded by the plain language of the release." (citation omitted)); *Liverpool*, 2021 WL 3604855, at *2 ("Settlement agreements are contracts and must therefore be construed according to general principles of contract law." (citation omitted)); *Dinkins*, 2016 WL 3637169, at *3 ("[R]eleases are contracts and their interpretation is governed by principles of contract law."  (citation omitted)).

On the other hand, courts applying more specific New York rules for the interpretation of releases have often limited the reach of these agreements to the litigation in which they were executed.  "[C]ourts applying New York law have more carefully scrutinized the context and language used in releases to ascertain whether a given dispute or transaction falls within a given release's scope."  *Barshay v. Naithani*, No. 20-CV-8579 (KPF), 2023 WL 2051170, at *9 (S.D.N.Y. Feb. 16, 2023), *aff'd*, No. 23-382, 2023 WL 8708424 (2d Cir. Dec. 18, 2023).  For instance, in *Gardstein v. Kemp & Beatley, Inc.*, the district court found that the general release signed by a plaintiff in a shareholder action against his former employer — containing nearly identical language to the general release here — did not bar his subsequent

21

claims for employment discrimination.  No. 82-CV-0781 (MEL), 1987 WL 7378, at *1–2 (S.D.N.Y. Feb. 20, 1987).  Instead, the court explained, "[t]he intention of the parties as to the scope of a general release is a function of the circumstances surrounding its execution as well as the literal language of the release."  *Id.* at *2 (citing, *inter alia*, *Mangini*, 249 N.E.2d 386, 389–90).

Other courts in the Southern and Eastern Districts of New York have followed suit.  *See, e.g.*, *Peralta v. City of New York*, No. 19-CV-7565 (JGK), 2022 WL 17832324, at *4 (S.D.N.Y. Dec. 21, 2022) ("[C]ourts in New York have repeatedly found that general language alone does not conclusively demonstrate a general release."); *Campos v. Aegis Realty Mgmt. Corp.*, No. 19-CV-2856 (KPF), 2020 WL 433356, at *9 (S.D.N.Y. Jan. 28, 2020) ("[C]ourts applying New York law have looked beyond the language of a general release and to the context in which it was entered into in determining the scope of that release."); *Vornado Realty Tr. v. Castlton Env't Contractors, LLC*, No. 08-CV-04823 (DLI) (JO), 2011 WL 4592800, at *4 (E.D.N.Y. Sep. 30, 2011), *modified on denial of reconsideration*, 2011 WL 5825688 (E.D.N.Y. Nov. 16, 2011) ("[C]ourts have avoided general releases with respect to uncontemplated transactions, even where the language in the release form provides general coverage, where the parties are 'looking no further than the precise matter in dispute that is being settled.'" (quoting *Mangini*, 249 N.E.2d at 389)); *In re Actrade Fin. Techs., Ltd.,* 424 B.R. 59, 69 (Bankr. S.D.N.Y. 2009) (applying the "principle of New York law that a release, general on its face, will be limited to those claims within the contemplation of the parties at the time").

Despite issuing several summary affirmances of dismissals based on general releases, the Second Circuit has not yet issued a published opinion that addresses when and under what circumstances general releases like this one will bar claims outside the settled action. *See Caraballo*, 2025 WL 1430152, at *2 (citing summary orders in *Mateo*, 799 F. App'x at 54; *Valdiviezo v. Greer*, 787 F. App'x 48, 49 (2d Cir. 2019); *Walker v. Corizon*, 764 F. App'x 78, 80 (2d Cir. 2019); *Fernandez v. City of New York*, 502 F. App'x 48, 49–50 (2d Cir. 2012); *Tromp v. City of New York*, 465 F. App'x 50, 53 (2d Cir. 2012)). Summary orders, though not precedential, are typically "highly persuasive and predictive of how the Second Circuit Court of Appeals would decide an issue in the future." *Liana Carrier Ltd. v. Pure Biofuels Corp.*, No. 14-CV-3406 (VM), 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015), *aff'd*, 672 F. App'x 85 (2d Cir. 2016); *see also* 2d. Cir. LR 32.1.1(a) ("Rulings by summary order do not have precedential effect."). As applied to this case, however, the predictive value of *Caraballo* — and the Second Circuit's summary orders cited therein — is more limited for several reasons.

First, although a "pattern of results" in prior summary orders "can provide an informative survey of the kinds of cases in which a doctrine has been found unproblematically to apply," *Cho v. City of New York*, 910 F.3d 639, 646 n.7 (2d Cir. 2018), the Court's statements in summary orders "do not provide binding authority." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 702 n.4 (2d Cir. 2009) (declining to follow summary orders despite language therein directly contrary to the Court's conclusion). That is particularly so where, as here, the Court's summary

23

order "involved a question of state law on which [the Second Circuit] is not the final word" and on which subsequent state court decisions have issued. *See Uviles v. City of New York*, 130 F.4th 27, 36 (2d Cir. 2025) (departing from summary order based on intervening decisions of the Appellate Division).

Moreover, neither *Caraballo* nor the Court's previous summary affirmances of dismissals based on general releases are on all fours with the circumstances here, where (1) the settlement agreement includes several terms indicating its scope may be confined to *Megginson I*, (2) the plaintiff was *pro se* and incarcerated when he signed it, and (3) a settlement in principle was reached prior to the incident in this case, with no additional consideration given for the release of additional claims. Lastly, the summary orders on which Defendants rely were decided without the benefit of the Court of Appeals' recent decision in *Smith*, which reaffirmed and clarified the burden Defendants must meet under the *Mangini* line of cases (even while affirming the defendants' claimed application of a general release on the specific facts presented). *See* 2025 WL 3671272, at *1–2.

## IV.   <u>**Construction of the Settlement Agreement**</u>

Beginning with the text of the settlement agreement, and drawing all reasonable inferences in Megginson's favor, the Court finds that it does not manifest the "clear and unambiguous" intent of the parties to release all claims existing at the time the agreement was signed, which is required by New York law to bar the present claims. *Smith*, 2025 WL 3671272, at *1 (citation omitted).

24

As an initial matter, the Court construes the three settlement documents in this case as a single agreement. New York courts typically treat settlement agreements as a whole, such that the documents that form the settlement are not considered extrinsic to the release. *See Prime Contractors, Inc.*, 754 F. Supp. 3d at 303–04 (relying on a settlement agreement to interpret the scope of release); *Est. of Spitz v. Pokoik*, 921 N.Y.S.2d 58, *60 (App. Div. 1st Dep't 2011) (relying on settlement agreement and incorporated documents to "make[] clear" the scope of a release); *Lexington Ins. Co. v. Combustion Eng'g, Inc.*, 693 N.Y.S.2d 146, 147–48 (App. Div 1st Dep't 1999) (declining to consider parol evidence but relying on settlement agreements to determine scope of release). This practice accords with the "multiple agreements rule" that reads multiple agreements as a single contract if they "were part of a single transaction intended to effectuate the same purpose." *Fernandez*, 502 F. App'x at 50 (quoting *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 90 (2d Cir. 2005)) (determining that releases did not fall within the multiple agreements rule where they were "signed at different times, memorialized in different documents and involved different parties" and did not refer to each other).

Here, the three settlement documents — which Defendants attach as a single exhibit to their motion — were all part of the transaction settling *Megginson I*. Defendants mailed all three documents to Megginson as a single packet. *See* Pl. Decl. ¶ 9. The documents also refer to each other: the stipulation of settlement refers explicitly to the "Stipulation dated October 19, 2022," *i.e.* the stipulation of dismissal, and the "documents necessary to effect this settlement, including, without limitation,

25

[the] General Release." Settlement Agreement at 3–4. The Court therefore finds that the documents were "part of a single transaction" and form a single agreement. *Fernandez*, 502 F. App'x at 50; *see also Campos*, 2020 WL 433356, at *9 (construing a release alongside a bankruptcy plan in which it appeared); *Smith v. City of New York*, No. 12-CV-4851 (ERK) (LB), 2014 WL 6783194, at *7 (E.D.N.Y. Dec. 2, 2014) (finding that "circumstances warrant reading the General Release and Stipulation together" because the two documents "were signed on the same day, relate to identical subject-matter, and the Stipulation references the General Release"). The Court will therefore consider the settlement agreement as a whole in determining the intrinsic meaning of the contract between Megginson and the City of New York.

Taken together, unlike in *Smith*, the settlement documents here do not manifest a "clear and unambiguous" intent of the parties to release all claims, including the *Megginson II* claims. *Smith*, 2025 WL 3671272, at *1. To be sure, the agreement includes language of general release. The stipulation of settlement states that in consideration for the payment of $2,000, "plaintiff agrees to dismissal of all the claims against the defendant and to release defendant City [and its employees] . . . from any and all [civil rights claims or related state law claims] from the beginning of the world to the date of the General Release." Settlement Agreement at 4. The general release, likewise, releases Defendants "from any and all liability, claims, or rights of action alleging a violation of [Megginson's] civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release." *Id.* at 6.

26

However, "[t]o determine whether a writing is unambiguous, language should not be read in isolation because the contract must be considered as a whole." *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011). Read as a whole, substantial intrinsic evidence on the face of the settlement documents indicates that the parties only intended to settle *Megginson I*, and that the language to the contrary is merely "standardized, even ritualistic, language" that "should not be determinative of the ultimate result." *Mangini*, 249 N.E.2d at 389–90.

*First*, the stipulation of settlement and stipulation of dismissal both bear the caption for *Megginson I*, and the general release identifies the releasor as the "plaintiff in the action entitled *[Megginson I]*." Settlement Agreement at 1, 3, 6. "It has long been the law that 'where a release contains a recital of a particular claim, obligation or controversy and there is nothing on the face of the instrument other than general words of release to show that anything more than the matters particularly specified was intended to be discharged, the general words of release are deemed to be limited thereby.'" *Morales v. Solomon Mgmt. Co.*, 832 N.Y.S.2d 195, 196–97 (App. Div. 1st Dep't 2007) (quoting *Mitchell v. Mitchell*, 170 A.D. 452, 456 (NY. App. Div. 1st Dep't 1915)). "The vitality of that principle has not faded in the ensuing decades." *Id.* at 197; *see also Mazzurco*, 63 N.Y.S.3d at 60 ("If the recitals in the release appear to limit the release to only certain claims, demands, or obligations, the release will operate only as to those matters."). "[C]onsistent with the principle of *ejusdem generis,* 'the general words of a release are limited by the recital of a particular claim.'" *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 647

27

(S.D.N.Y. 2004) (quoting *Herman v. Malamed,* 487 N.Y.S.2d 791, 793 (App. Div. 1st Dep't 1985)).  A general release like that here, which begins with "specific recitals as to the claims being released" but "conclude[s] with an omnibus clause" is thus "limited by the recital of a particular claim, where there is nothing on the face of the instrument, other than general words of release, indicating that matters other than those specifically referred to were intended to be discharged." *Peralta*, 2022 WL 17832324, at *4 (quoting *Green v. Lake Placid 1980 Olympic Games, Inc.*, 538 N.Y.S.2d 82, 84 (App. Div. 3d Dep't 1989) (quoting 19 NY Jur. 2d, Compromise, Accord, and Release, § 83, at 435)); *see also Augustin v. City of New York*, No. 15290/2014, 2022 WL 1081235, at *2 (N.Y. Sup. Ct. Mar. 31, 2022) (determining that "although the release language is broad, the inclusion of only the *Augustin I* case caption and index number can be read as a limiting factor upon which the release language applied").  Here, apart from the general language of release, there is no indication on the face of the settlement documents that the parties intended to settle any claims beyond *Megginson I.  See generally* Settlement Agreement.  Thus, the inclusion of the *Megginson I* docket number on all three documents supports Plaintiff's argument that the parties only intended to settle that action.[5]

---

[5] Although the Second Circuit made a different inference in *Caraballo*, determining that the inclusion of the index number for the action in the general release was "plainly meant to identify [plaintiff] as the releasor, not to limit the scope of the release," 2025 WL 1430152, at *2, the Court finds that discussion is not predictive of how the Second Circuit would rule in this case.  There is no indication that the *Caraballo* panel was alerted to the New York jurisprudence on this issue, which is binding upon this Court.  In any case, in *Caraballo*, the inclusion of the index number was the only intrinsic evidence of ambiguity the plaintiff identified.  *See id.* Here, by contrast, the index number is only the first of several indications on the face

*Second*, the stipulation of settlement clearly describes the "desire" of the parties to "resolve the issues raised in *this litigation*." Settlement Agreement at 3 (emphasis added). It adds that in light of that desire, "[t]he above-referenced action [*Megginson I*] is hereby dismissed . . . with prejudice, and without costs" except that "Defendant City of New York hereby agrees to pay plaintiff Michael Megginson the sum of Two Thousand ($2,000.00) Dollars in full satisfaction of all claims . . . ." *Id.* at 3–4. Despite the general language of release found elsewhere in the settlement agreement, this specific language controls. The "meaning and coverage of a general release depends upon the purpose for which the release was actually given." *Mazzurco*, 63 N.Y.S.3d at 59 (citation modified). Here, the stipulation of settlement makes clear that the purpose of the release was "to resolve the issues raised in [*Megginson I*]." Settlement Agreement at 3. Such language is highly indicative of intent. *See Prime Contractors, Inc.*, 754 F. Supp. 3d at 304 (finding that a "[s]ettlement [a]greement whose defined purpose was to resolve all matters currently in controversy" rendered a more broadly worded release ambiguous). Under New York law, this intent, not the boilerplate language of a general release, is dispositive. *See Vornado Realty Tr.*, 2011 WL 4592800, at *5 (finding release ambiguous despite apparently broad provisions, where the settlement agreement included "several

---

of the settlement documents that the parties did not intend to settle disputes beyond the one identified in the caption. *See Pentacon BV v. Vanderhaegen*, No. 23 CIV. 2172 (KPF), 2024 WL 3835334, at *12–13 (S.D.N.Y. Aug. 15, 2024) (declining to follow a summary order and finding it distinguishable where the contract considered by the Second Circuit lacked dispositive terms present before the district court).

'Whereas' statements that reference[d] the claims at issue in the [first] action and the parties' desire to specifically settle that action.").

To be sure, in a summary order cited by Defendants, Def. Mem. at 8, the Second Circuit found a similar "whereas" clause "did not limit the scope of the General Release[, but] simply evidenced the parties' intent to resolve the litigation at hand." *Tromp*, 465 F. App'x at 53. However, that summary order did not specifically address the standards articulated by the Court of Appeals in *Mangini* and its progeny, which require a court to interpret a release according to the parties' intent. *See Peterson v. Regina*, 935 F. Supp. 2d 628, 640 (S.D.N.Y. 2013) (respectfully declining to apply *Tromp* to bar Plaintiff's claim because *Tromp* did not consider the relevant precedent); *see also In re Actrade Fin. Techs., Ltd.*, 424 B.R. at 70 (noting that the Court of Appeals in *Mangini* cited multiple cases "where the Courts held that the fact that the settlement agreements contained recitals regarding particular claims limited the general words of a release to the claims that were within the parties' contemplation"). Applying the *Mangini* line of cases here, the Court finds the statement of intent in the stipulation of settlement instructive as to the limited scope of the general release.

*Third*, the stipulation of settlement further notes that "[t]his stipulation shall not be admissible in, *nor is it related to*, any other litigation *or settlement negotiations*, except to enforce the terms of this agreement. Settlement Agreement at 4–5 (emphasis added). This language strongly suggests that the release was intended only to relate to the settlement of *Megginson I*, not any other actions. *See Smith v.*

30

*New York*, 2014 WL 6783194, at \*7 (finding ambiguity created by limiting provision that stipulation "shall not be admissible in, nor is it related to, any other litigation").

*Finally*, as important as the language relating to *Megginson I* throughout the settlement agreement is what is missing: a clear statement of intent to settle *Megginson II* or any other claims then outstanding. Apart from the "general words of release," there is "nothing on the face of the instrument[s]" that indicates the parties intended to settle any matters beyond *Megginson I*. *See Morales*, 832 N.Y.S.2d at 196. By contrast, in *Smith*, the general terms of release were augmented by an exclusion clause clearly directing the releasor, in bold and all caps, to list any claims he wished to exclude, and warning that the release would cover any outstanding claims not excluded specifically by name. 2025 WL 3671272, at \*1. There, the Court of Appeals determined that the plaintiff's failure to list his outstanding claims following such warnings was an "objective manifestation of assent" to release them. *Id.* at \*2; *see also Mateo*, 799 F. App'x at 53–54 (finding unambiguous a general release that included a similar exclusion clause). Here, however, the settlement agreement made no mention of its effect on any other outstanding claims or the need to exclude such claims. *See generally* Settlement Agreement. Absent such language, the Court must presume that the "controversy being settled" determines the "purpose for which the release was actually given" applies. *Cahill*, 157 N.E.2d at 509–10.

Construing the settlement agreement as a whole, Megginson did not clearly and unambiguously release his *Megginson II* claims when he settled *Megginson I*.

31

Where the parties dispute the meaning of a contract, "a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning." *Sayers v. Rochester Tel. Corp. Supplemental Mgm't Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993); *see also id.* at 1095 (holding that a court may determine the meaning of a contract as a matter of law only if has a "definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion"). If, however, the contract is ambiguous, "the contract's meaning becomes an issue of fact precluding summary judgment." *Id.* at 1094. Defendants have not carried their burden to show, beyond a genuine dispute of material fact, "that the release was intended to cover [*Megginson II*]." *Mazzurco*, 63 N.Y.S.3d at 60. Defendants' motion is therefore denied.

## V.     **Parol Evidence of Intent**

As an alternative ground for denying Defendants' motion, parol evidence submitted by Megginson — which Defendants have neither questioned nor contradicted — also supports Megginson's claim as to the limited intended scope of this release. A court may consult parol evidence beyond the four corners of the agreement "if the agreement is ambiguous" and "is susceptible to more than one reasonable interpretation." *Brad H.*, 951 N.E.2d at 746 (citation omitted). The Court may also consult such evidence to determine whether there was a mutual mistake as to the scope of the release. *Smith*, 2025 WL 3671272, at *1. That evidence begins with the timing of the settlement negotiations and the fact that counsel for Defendants lacked actual knowledge of the *Megginson II* claims at the time of release.

32

It also includes Megginson's *pro se* status, his circumstances at Rikers Island when he executed the release, the small consideration he received, and the lack of additional consideration for his *Megginson II* claims.

Drawing all reasonable inferences in Megginson's favor as the non-movant, the evidence adduced by the parties supports Megginson's argument that neither party specifically intended to release the *Megginson II* claims when executing the *Megginson I* release. "It is [] a firm principle of New York law that it is less likely that claims are covered by a general release if they are unknown at the time of the release." *In re Actrade Fin. Techs., Ltd.*, 424 B.R. at 72. That principle extends to claims that have accrued but are not yet "in dispute." *Chiappone v. N. Shore Univ. Hosp.*, 164 A.D.3d 463, 464–65 (N.Y. App. Div. 2d Dep't 2018). In *Chiappone*, for instance, the plaintiff sued a hospital for medical malpractice during an endoscopy. *Id.* at 464. While that action was pending, the plaintiff was again admitted to the hospital, where he suffered a fall that ultimately led to his death. *Id.* In connection with the first action, the plaintiff's representative then signed a general release for all personal injury claims against the hospital "from the beginning of the world to the day of the date of [the release]." *Id.* The Appellate Division determined that the release did not preclude his later wrongful death action because, "[w]hile the plaintiff['s representative] may have been aware of the incident giving rise to Action No. 2 when she signed the release," that incident was not yet "in dispute." *Id.* at 465.

So too here. Megginson has attested, and Defendants do not dispute, that at the time the settlement in principle was reached, his negotiations with the Office of

33

the Corporation Counsel were limited to his claims in *Megginson I*. Pl. Decl. ¶ 10. Megginson was then re-detained at Rikers Island, where he allegedly suffered another injury. *Id.* at ¶¶ 7–8. Although Megginson signed the settlement agreement after the instant claims accrued, those claims were not yet in dispute as he had yet to file the instant suit.

Defendants' assertion that the timing of the settlement in principle is "immaterial" to the result is misplaced. Def. Reply at 4. Because the assault at issue in *Megginson II* had not yet occurred when the parties decided to settle *Megginson I*, the parties "did not [] and could not" intend for the release to encompass any claims resulting from it. *Mangini*, 249 N.E.2d at 393. The timing of the agreement in principle, which is not contested by Defendants, is strong support for Megginson's claim that the "general language of the release . . . does not represent the intent of the parties." *Id.* at 390. Nor was the agreement in principle modified after the second alleged assault occurred. In fact, there is no evidence that the City was aware of the *Megginson II* claims before this action was filed on January 5, 2024, more than a year after the release was executed on October 27, 2022. As discussed further below, although Megginson experienced the second assault firsthand, the Court will not impute knowledge of potential legal claims arising from those events to him under the circumstances. Thus, as it is not clear that either party contemplated a *Megginson II* suit when the settlement agreement in *Megginson I* was executed, the Court does not find that they intended to release those claims. *Mangini*, 249 N.E.2d at 393.

34

Megginson urges that because he "was acting *pro se* when he signed the release, has no legal training, and his highest level of education is the 12th grade," the Court should not impute knowledge of the fact that signing a general release could potentially bar unrelated claims (*i.e., Megginson II*) arising from a separate violation of his civil rights by a different group of correctional officers. Pl. Mem. at 10. The Court agrees. Even in situations "falling far short of actual fraud," a release of unknown claims may be set aside if it was not "fairly and knowingly made." *Mangini*, 249 N.E.2d at 392–93 (citation omitted). Such circumstances exist when the releasor had "little time for investigation or deliberation, or because of the existence of overreaching or unfair circumstances." *Haynes v. Garez*, 758 N.Y.S.2d 391, 392–93 (App. Div. 2d Dep't 2003) (questioning whether a release was fairly and knowingly made by personal injury plaintiff who, without counsel, signed an agreement drafted by insurance company). In particular, "the opportunity to consult counsel is at least a factor to be considered when analyzing the volition with which a party entered into a contract." *Johnson v. Lebanese Am. Univ.*, 922 N.Y.S.2d 57, 58, 61–62 (App. Div. 1st Dep't 2011) (adopting a more limited scope of a release signed upon termination by a university employee and noting that plaintiff lacked the opportunity to consult counsel before signing); *see also Green*, 538 N.Y.S.2d at 84 (noting the fact that a release was "prepared by defendant's attorney and not reviewed by [plaintiff]'s attorney prior to its execution").

The Second Circuit's statement in its summary order in *Caraballo* — that a party's *pro se* status should not be considered in construing a release because "New

35

York law proscribes such considerations" — upon which Defendants rely, is not dispositive. 2025 WL 1430152, at *3. There, the Second Circuit cited New York law concerning the effect of a unilateral mistake. *Id.* (citing *LeMay v. H.W. Keeney, Inc.*, 508 N.Y.S.2d 768, 770 (App. Div. 4th Dep't 1986)). The doctrine of unilateral mistake is distinct from decisions of the Appellate Division's First and Second Departments finding *pro se* status relevant to whether a release was "fairly and knowingly made." *See Johnson*, 922 N.Y.S.2d at 58–59; *Haynes*, 758 N.Y.S3d at 392–93; *see also Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998) (finding a release was "knowingly and voluntarily entered into" where plaintiff, who had an associates' degree in business, was advised to seek legal advice before signing and had the opportunity to do so). Moreover, the *Caraballo* Court lacked the benefit of the Court of Appeals' decision in *Smith*. Far from finding the consideration of a party's representation (or lack thereof) "proscribe[d]" by New York law, the Court of Appeals determined that "[b]ecause plaintiff was represented by the *same attorney* in [both actions covered by the general release], we have no occasion to opine on whether a similar result would obtain had he been represented by different counsel in each action when he executed the release." *Smith*, 2025 WL 3671272, at *2 n.2 (emphasis added). If a Plaintiff's representation by two different attorneys might bear on the crucial question of whether he clearly and unambiguously intended to release his claims, his lack of an attorney altogether would create even more compelling grounds to find that he did not.

36

Here, Megginson's inability to consult an attorney before signing the release was exacerbated by the fact that he executed the release while incarcerated at Rikers Island, where access to even rudimentary legal research is severely limited. *See generally* Bd. of Corr. of N.Y.C., Law Library Assessment (Nov. 2024) (noting that Rikers Island law libraries fall short of Board of Corrections standards and are limited by broken equipment, low supplies, irregular schedules, and insufficient space).[6] Because Megginson's limited options at the time of signing the release are indicative of "overreaching or unfair circumstances," the Court does not impute to him knowledge that he was releasing his *Megginson II* claims. *Applewhite v. 112 Liberty Assocs., LLC*, 223 N.Y.S.3d 275, 277 (App. Div. 2d Dep't 2024) (setting aside a general release signed by an employee who was told he needed to sign it in order to return to work, and who signed it without the opportunity to consult his attorney and under economic pressure).

Defendants' further contention — that Megginson should be imputed greater understanding of the effect of the general release than other *pro se* parties because he had litigated other actions against the City and signed two other general releases in the past — is also unpersuasive. *See* Def. Reply at 5. Megginson has attested that in his previous actions, no one ever explained to him that a release could affect claims in other litigation. Pl. Decl. ¶ 15. And the fact that Megginson's previous two general releases did *not* actually prevent him from bringing subsequent legal actions could

---

6 Available at https://www.nyc.gov/assets/boc/downloads/pdf/BOCs-Assessment-of-Law-Library-Services-on-Rikers-Island-Report-FINAL.pdf.

easily have led him to the opposite understanding at the time he executed this one — *i.e.,* that such releases are limited to the claims they resolve.  Nor has Megginson, who did not stay in school past twelfth grade, *id.* at ¶ 16, demonstrated a legal understanding beyond what is typical of *pro se* litigants.  *See Huang v. Llerena-Salazar*, 203 N.Y.S.3d 341, 344 (App. Div. 2d Dep't 2023) (reversing summary judgment based on a general release where plaintiff averred that, *inter alia,* defendants "never explained that the document he signed was a release" and plaintiff was not represented by an attorney at the time he signed it).

Finally, Megginson urges the Court to consider the relatively small amount of consideration he received for the release — just $2,000 — in construing the scope of the release.  Pl. Mem. at 11.  "While courts do not ordinarily question the amount of consideration supporting an agreement, it is appropriate to consider whether a relatively small amount of consideration paid to a releasor in exchange for signing a release suggests that the scope of the release is narrower than is urged by the releasee." *Johnson*, 922 N.Y.S.2d at 61.  Courts interpreting the scope of a release regularly look to the amount of consideration to determine what the parties intended to bargain for. *See, e.g., id.* at 61–62 (finding that release signed for $4,651.94 likely did not include plaintiff's employment discrimination claim); *Haynes*, 758 N.Y.S.2d at 392–93  (finding $300 consideration for a general release more consistent with payment for property damage than for personal injury); *Best v. Yutaka*, 683 N.E.2d 12, 13 (N.Y. 1997), *overruled on other grounds by Oakes v. Patel*, 988 N.E.2d 488 (N.Y. 2013) (reversing grant of summary judgment on affirmative defense of release in

personal injury action where consideration for release "appear[ed] to be more consistent with the value of plaintiffs' automobile than with a personal injury claim").

Here, the final agreement to settle the *Megginson I* claims for just $2,000 is evidence that the parties did not intend to release the *Megginson II* claims. *Compare Haynes*, 758 N.Y.S.2d at 392 (release for $300 did not cover other claims) *with Mateo*, 799 F. App'x at 52 (release for $50,000 included other claims); *Liverpool*, 2021 WL 3604855, at *1, 3 (release for $15,000 included other claims); *Arzu*, 2015 WL 4635602, at *1, 4 (same). And that is particularly so given that *no additional consideration* above the original $2,000 agreement was given for the release of any additional claims. *See Consol. Edison, Inc.*, 332 F. Supp. 2d at 649 (finding it "inconceivable" that parties "would bargain away [an additional] claim without any monetary consideration, and [that] the terms of the release cannot reasonably be read to require such a result"); *Green*, 538 N.Y.S.2d at 84 (noting that "no consideration was furnished for the release of any additional claim and, in fact, no other claim was in suit at the time"). Given that Megginson has alleged that during the *Megginson II* assault, he was brutally beaten around the head, face, and ears — including not just by the officers' fists but with handcuffs — and his injuries were so apparent that he was taken for an outside evaluation at Bellevue Hospital, Compl. ¶¶ 1–10, the Court agrees that it is "inconceivable" that he intended to release those claims just weeks after the incident without receiving a single dollar of additional consideration in exchange for doing so. *Consol. Edison, Inc.*, 332 F.Supp. 2d. at 649.

39

In short, Defendants have not carried their burden at summary judgment to show beyond a genuine dispute of material fact that the parties clearly and unambiguously intended to settle this action when they executed the *Megginson I* settlement agreement. *Smith*, 2025 WL 3671272, at *1. As the release "may not be read to cover matters which the parties did not desire or intend to dispose of," *Lefrak SBN Assocs. v. Kennedy Galleries, Inc.*, 609 N.Y.S.2d 651 (App. Div. 2d Dep't 1994) (citing *Cahill*, 157 N.E.3d at 510), Defendants' motion is denied.

## CONCLUSION

Drawing all reasonable inferences in Megginson's favor, and applying New York law, neither the terms of the settlement agreement nor the circumstances in which it was executed evince a clear and unambiguous intent of the parties to settle *Megginson II*. Defendants' motion is converted into one for summary judgment and is DENIED. Plaintiff's request for discovery concerning the nature and timing of settlement negotiations in *Megginson I* is denied as moot.

SO ORDERED.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated:      February 25, 2026
            Brooklyn, New York